IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JEAN K. HERRING, | ) | Civil Action No.: 4:17-CV-00248-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| STRUTHERS-DUNN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On January 26, 2017, Plaintiff Jean K. Herring ("Herring") filed this action, alleging former employer Struthers-Dunn, LLC ("Struthers-Dunn") discriminated against her on the basis of gender and age and for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. § 2000e, *et seq*., and in violation of The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. On December 14, 2017, Defendant filed a Motion for Summary Judgment. [ECF #26]. On December 28, 2017, Plaintiff filed her response in opposition to Defendant's motion. [ECF #28]. On January 11, 2018 Defendant filed its reply in support of its motion. [ECF #32]. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.) this matter was referred to a Magistrate Judge for pretrial handling. This matter is now before the Court after issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III. [ECF #39]. In the R&R, the Magistrate Judge recommends granting Defendant's Motion for Summary Judgment with respect to most of Plaintiff's claims, with the exception of Plaintiff's retaliation claim stemming from her termination.

<u>**Standards of Review**</u>

**I. Review of the Magistrate Judge's R&R**

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The district court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

**II. Summary Judgment Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary

judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

Defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If Defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of

a genuine and material factual issue for trial.  *See* Fed. R. Civ. P. 56©, (e); *Baber*, 977 F.2d at

875 (citing *Celotex*, 477 U.S. at 324)).  Moreover, the nonmovant's proof must meet "the

substantive evidentiary standard of proof that would apply at a trial on the merits."  *Mitchell v.*

*Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d

1229, 1223 n.7 (4th Cir. 1989).  In discrimination cases, a party is entitled to summary judgment

if no reasonable jury could rule in the non-moving party's favor.  *See Dennis v. Columbia*

*Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

## Factual Background and Procedural History

The relevant facts and procedural history were adequately set forth in the R&R. Briefly

stated, Struthers-Dunn is a small, closely-held company that designs and manufactures electrical

relays and is based in Timmonsville, South Carolina.  [ECF #26-5, Steinback Aff., ¶ 1].[1]  In 2005,

Plaintiff was hired at Struthers-Dunn initially as a human resources ("HR") manager, and most

recently, working as a part-time HR manager. [ECF #26-7, Herring Dep. 7: 5-10]; [ECF #1, ¶ 6].

In February 2016, Plaintiff alleges she was removed from her dual role as manufacturing manager

and HR manager, replaced by a less-qualified, younger male, and demoted to a part-time HR

manager with a reduction in salary and loss of benefits. [ECF #1, ¶ 8; ¶ 9].  On November 28,

2016, Struthers-Dunn chose to eliminate Plaintiff's position with the company.  [ECF #26-5,

Steinback Aff., ¶ 13]. At the time Plaintiff's position was eliminated, she was sixty-three years

old.[2] According to Mr. Eric Steinback, the C.E.O. of Defendant, at the time Plaintiff was hired,

---

[1]Eric Steinback is the sole member and C.E.O. of Struthers-Dunn. In the course of this litigation, he provided an affidavit in support of Defendant's Motion for Summary Judgment.

[2]In her deposition, Plaintiff testified that she was born on October 17, 1953. [ECF #26-7, Herring Dep. 108: 11-13].

Defendant employed approximately 80 employees. [ECF #26-5, Steinback Aff., ¶ 2]. However, by 2010, Defendant employed approximately half that number of employees. [ECF #26-5, Steinback Aff., ¶ 2]. Due to the apparent ongoing reduction of employees, by 2007, Steinback asserts that a full time HR manager was no longer needed. [ECF #26-5, Steinback Aff., ¶ 2]. Further, due to the apparent difficulty with recruitment and retention of employees, Defendant decided to "split" the duties of the manufacturing manager so that one employee would handle the technical aspects of the company, while another employee handled the "people" component. [ECF #26-5, Steinback Aff., ¶ 3]. Plaintiff was asked to handle the supervision of the workers, including scheduling, attendance, processing orders, and monitoring safety, while another employee would oversee the actual manufacturing process. [ECF #26-5, Steinback Aff., ¶ 3]. Both Mr. Steinback and Mr. Daniel Helder state that Defendant hired Helder in 2011, who at the time of hire, was 29 years old. [ECF #26-5, Steinback Aff., ¶ 4]; [ECF #26-6. Helder Aff., ¶ 1].[3] The parties do not appear to dispute the fact that Mr. Helder, who holds a degree in Electro-Mechanical Engineering, assisted in the technical side of the manufacturing process. [ECF #26-5, Steinback Aff., ¶ 4]. Plaintiff and Defendant agree that Mr. Helder did not directly supervise Plaintiff and at no time had the authority to terminate or discipline Plaintiff. [ECF #26-5, Steinback Aff., ¶ 4]; [ECF #26-7, Herring Dep. 120: 8-13]. During this time, Defendant asked Plaintiff to take on certain supervisory roles within company, in addition to her continued HR responsibilities. [ECF #30-2, p. 2].

Mr. Steinback further states that sometime during 2015, Mr. Helder approached his

---

[3] Plaintiff states that Mr. Helder was hired in 2013. [ECF #1, ¶ 10; ECF #30-3].

superiors and expressed his opinion that Plaintiff lacked the experience and qualifications to serve in the role she held at that time as manufacturing manager. [ECF #26-5, Steinback Aff., ¶ 5].[4] According to Mr. Steinback, in the conversation he had with Mr. Helder regarding Plaintiff's lack of experience and qualifications, at no time during those conversation did he indicate his opinions were based on Plaintiff's sex or age. [ECF #26-5, Steinback Aff., ¶ 5]. Around this same time frame, Plaintiff states that she spoke with a superior regarding issues that she personally had with Mr. Helder, as well as issues others individuals had with Mr. Helder. Plaintiff's recollection of these interactions are memorialized in a series of notes that she took regarding Mr. Helder's behavior. [ECF #30-7]. These notes range from August 2015-January 2016 and include accounts of information she either observed or was told by other employees regarding Mr. Helder. [ECF #30-7]. According to Plaintiff, she told President David Moore that another employee told her that Mr. Helder was calling employees names, including calling one employee "black jemima." [ECF #30-7]. On another occasion, Plaintiff describes an incident in these notes where another employee allegedly told her that Mr. Helder said he "wants to hire a couple of younger people" to work with him. [ECF #30-7]. The remainder of the notes taken by Plaintiff reflect comments allegedly made by Mr. Helder which indicate he personally disliked Ms. Herring. [ECF #30-7]. Mr. Moore also recalls having a conversation with Plaintiff in which she voiced her complaints regarding Mr. Helder's comments about Plaintiff and other employees, as well as her job abilities. [ECF #26-6, Moore Dep. 44:11-24]. Further, Mr. Moore recalls Plaintiff communicating her beliefs

---

[4] According to Mr. Helder, this observation arose from his personal experience working with Plaintiff that she lacked the knowledge necessary to communicate with other employees, as well as a general interest on her part to learn about the company's products. [ECF #26-6. Helder Aff., ¶ 4].

that Mr. Helder did not like women. [ECF #26-6, Moore Dep. 44:11-24].

In 2015, Defendant agreed to allow Mr. Helder to work remotely after he voiced his desire to relocate to another area outside of South Carolina. [ECF #26-5, Steinback Aff., ¶ 11].[5] However, the relocation left Defendant with a need for someone to fulfill the technical aspects of Mr. Helder's position. [ECF #26-5, Steinback Aff., ¶ 6]. During this same time frame, Defendant was also seeking certification from the International Organization for Standardization ("ISO"). [ECF #26-5, Steinback Aff., ¶ 8]. This certification would allow Defendant to remain competitive within the industry, but it also required Defendant to employ someone who had ISO certification experience. [ECF #26-5, Steinback Aff., ¶ 5]. In light of the fact that Mr. Helder's relocation prevented him from performing the technical aspects of the manufacturing position, coupled with the decision to seek ISO certification, Mr. Steinback alleges that Defendant made the decision to increase the expectations and skill set of the manufacturing manager position. [ECF #26-5, Steinback Aff., ¶ 9]. Because Plaintiff lacked the skill set required to fulfill this role, but Defendant still had HR needs, Defendant decided to offer Plaintiff a part time position as an HR manager. [ECF #26-5, Steinback Aff., ¶ 10]. Plaintiff acknowledges that Mr. Helder did not make the decision to remove her as manufacturing manager. [ECF #26-7, Herring Dep. 123: 8-12]. However, Plaintiff argues, as acknowledged by Mr. Moore, Mr. Helder was "one voice that we listened to." [ECF #26-8, Moore Dep. 43:15-20].

According to Plaintiff, while she may not have an engineering degree, Plaintiff had on the

---

[5] According to Mr. Steinback, Mr. Helder was able to retain his position and work from a remote location because he had performed satisfactorily for Defendant, and his engineering duties did not require him to be physically located at the manufacturing facility. [ECF #26-5, Steinback Aff., ¶ 6].

job experience in learning manufacturing management. [ECF #28, p. 4]. Plaintiff further argues that for ten years, she worked as the manufacturing manager with a team to handle technical issues. [ECF #28, p. 4]. No other employees had their workload reduced to a part-time position at this time. [ECF #30-4, Moore Dep. 54]. Nonetheless, in February of 2016, Plaintiff accepted the part time position in HR. [ECF #26-5, Steinback Aff., ¶ 11].[6] Approximately two months later, in April of 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation, as well as sex and age discrimination. Meanwhile, in the fall of 2016, Defendant sought quotes from other payroll companies after becoming dissatisfied with their current payroll provider. [ECF #30-4, Moore Dep. 80:1-22]; [ECF #26-5, Steinback Aff. ¶ 13]. In that process, Defendant received a quote from Employer HR Group ("EHRG") to handle all of Defendant's HR processes. [ECF #26-5, Steinback Aff., ¶ 13]. Defendant learned that EHRG could handle its HR and payroll needs for an amount that was much lower than the total costs to the company for a part-time HR manager. [ECF #26-5, Steinback Aff., ¶ 13]; [ECF #30-5]. Therefore, according to Defendant, based on financial savings, it decided to eliminate the part time HR position and outsource its HR needs effective November 28, 2016. [ECF #26-5, Steinback Aff., ¶ 13]; [ECF #30-4; Moore Dep. 79:1-5].

Plaintiff points out that EHRG did not actually begin providing services to Defendant until January 1, 2017. [ECF #30-5]. Plaintiff further doubts whether contracting with EHRG created an actual savings for Defendant because she believed her scope of services far exceeded what EHRG

---

[6]Soon thereafter, Mr. Moore apparently advised Mr. Steinback that he met an individual named Robert Fleschner who had the requisite education and experience for the manufacturing manager position. Mr. Fleschner, who was in his fifties at the time of his hire, became the new manufacturing manager, making $86,000 a year. [ECF #26-5, Steinback Aff., ¶ 12].

provided. She further argues that it appears to her that the documents reflecting Defendant's relationship with EHRG reflect that EHRG only provides payroll services to Defendant. [ECF #30-5]. Based upon Plaintiff's belief that the severance offer presented to her was not fair compensation for her position, Plaintiff requested severance for three years at her full time rate. [ECF #28, p. 8]. Plaintiff alleges that Defendant denied this request, at which time she commenced litigation. [ECF #28, p. 8].

**Discussion**

**A. Plaintiff's Discrimination Claims**

1. Age Discrimination pursuant to the ADEA

Within the R&R, the Magistrate Judge recommends granting summary judgment to Defendant as to Plaintiff's age discrimination claims brought pursuant to the ADEA. Specifically, the Magistrate Judge considered Plaintiff's factual allegations and determined that while Plaintiff could establish a prima facie case of age discrimination, Plaintiff did not present any evidence to support her allegation that Defendant (or more specifically Mr. Helder) exhibited discriminatory animus toward Plaintiff based upon her age. [ECF #39, pp. 15-16]. Therefore, the Magistrate Judge determined that Plaintiff did not meet her burden under the ADEA to show that she was discriminated against because of her age. Plaintiff did not object to the Magistrate Judge's findings that her claims brought pursuant to the ADEA should be dismissed. This Court has thoroughly reviewed the Magistrate Judge's analysis of Plaintiff's claim that she was discriminated against based on her age. Upon review, this Court finds no clear error in the analysis found in the R&R with respect to this claim. *See Diamond*, 416 F.3d at 315. Accordingly, this Court

agrees with the Magistrate Judge's recommendation to grant summary judgment in favor of Defendant as to Plaintiff's age discrimination claims.

2. Gender/Sex Discrimination pursuant to Title VII

The Magistrate Judge recommends the Court grant summary judgment as to Plaintiff's Title VII claim on the basis that Plaintiff has not met her burden of creating a genuine issue of material fact as to whether Defendant discriminated against her because of her gender under the *McDonnell Douglas*[7] burden shifting scheme. Plaintiff objects to this recommendation, arguing that she has presented facts to support her argument that her offer to work part time was based on another manager's discriminatory attitude toward women and argues that her claim should not be invalidated simply due to lack of comparator evidence. Plaintiff further argues that she has provided sufficient facts to prove that Defendant's decision to change her position from full-time manufacturing manager to a part-time human resources position was pretext.

Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against an individual with respect to his or her compensation, terms, conditions, or privileges, of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to establish a cause of action under Title VII, a plaintiff may either provide direct evidence[8] or evidence sufficient to

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[8]Defendant argues within its initial memorandum that Plaintiff failed to provide any direct evidence of discrimination based on sex. Direct evidence might be evidence of conduct or statements that reflect directly the alleged discriminatory attitude or bear directly on the contested employment decision. *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995) (*abrogated on other grounds*). The kind of statements that suffice to show direct evidence of discrimination are those comments that do not require "inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989). A review of the record reveals that Plaintiff has not presented any evidence that would establish direct evidence of discrimination.

satisfy the burden-shifting scheme under *McDonnell Douglas*. Under the burden-shifting scheme announced in *McDonnell Douglas*, the three-step framework involved is that a plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). If successful, then the defendant employer must present a legitimate, non-discriminatory reason for its employment action. *Id.* If the employer meets this burden, the presumption of unlawful discrimination "drops out of the picture" and the burden shifts back to the employee to show the reason given by his or her employer was pretextual. *Id.* Ultimately, the plaintiff bears the burden of proving the employer intentionally discriminated against her. *Id.* In order to establish a prima facie case of discrimination under Title VII, a Plaintiff must show the following: (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse action, she was performing her job at a level that met her employer's legitimate expectations; and (4) she suffered the adverse action under circumstances giving rise to an inference of unlawful discrimination. *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 559 (4th Cir. 2011).[9] The Magistrate Judge recommended finding Plaintiff met her initial burden of establishing a prima facie case of sex discrimination.

However, the Magistrate Judge determined that Defendant set forth a legitimate, non-discriminatory reason for replacing Plaintiff in her role, and Plaintiff did not provide sufficient

---

[9]Defendant argued Plaintiff had not met the fourth element to establish a prima facie case of discrimination. However, the Magistrate Judge disagreed and recommended finding that under the facts of this case, Plaintiff's evidence that Defendant hired a male to take over the manufacturing role was sufficient. Defendant did not expressly object to this recommendation. Nevertheless, this Court has reviewed the record and agrees that Plaintiff established a *prima facie* case of discrimination based on her sex as it relates to her "demotion."

evidence to show that Defendant's proffered reasons for its employment action (i.e. to change Plaintiff's employment to a part-time HR position) was pretext for discrimination. Defendant asserts that Plaintiff was replaced as the manufacturing manager by someone who had a technical background for the position and who could help the company seek ISO certification. Plaintiff did not argue that these reasons were not legitimate. Instead, in her objections, Plaintiff relies heavily upon her own assessment that Mr. Helder harbored a discriminatory animus toward women to "prove" Defendant's reason for her "demotion" were pretext. *See Matherly v. Andrews*, 859 F.3d 264, 280 (4th Cir. 2017) (stating that conclusory or speculative allegations do not suffice to defeat summary judgment, nor does a "mere scintilla of evidence."). The evidence she provides to show pretext is that she received a number of complaints from other women regarding Mr. Helder's alleged ill treatment toward them, as well as her own belief that he did not like women. This is the basis upon which she argues she complained to Defendant that Mr. Helder "appeared to have an issue with women." [ECF #41, p. 4]. Plaintiff produced a document she created titled "Plaintiff's Special Notes" that document some of these complaints. However, these notes, at best, indicate that Mr. Helder did not like Plaintiff, or that Mr. Helder did not believe she possessed the requisite skills for the position she held. While these notes are apparent references to her own thoughts and recollections of conversations other employees had with Plaintiff regarding their interactions with Mr. Helder,[10] her own observations do not establish that Mr. Helder held a discriminatory attitude toward women that formed the basis of Defendant's employment decision. Nor does Plaintiff come forward with sufficient evidence that the supervisors who made the hiring

---

[10]This Court assumes the veracity and accuracy of these notes for purposes of this motion, as Defendant does not argue to the contrary.

decision harbored these same alleged discriminatory opinions or believed Mr. Helder held these opinions. At best, Plaintiff's notes suggest that she advised Mr. Moore that Mr. Helder allegedly told other employees that "he was getting me gone," as well as advised Mr. Moore that Mr. Helder had a problem with women. [ECF #30-7]. However, Plaintiff has not provided sufficient evidence to suggest that these comments formed the basis of Defendant's ultimate decision to reduce her workload, nor to do they rebut Defendant's assertion that it hired someone with the desired technical background to perform the manufacturing manager role.[11] In her deposition, Plaintiff admitted that she did not have any evidence that Mr. Helder had anything to do with this business decision other than the fact that "he ran his mouth and told everybody" that she did not need to be in her current position with the company. [ECF #26-7, Herring Dep. 122:1-24; 123:1-7].

Nonetheless, Plaintiff further objects to the R&R, arguing she is unable to present comparator evidence that men were treated more favorably than women because Mr. Helder was the manager of an all-female department. It is true that a plaintiff need not point to a similarly situated comparator in order to prevail on his or her discrimination claim. *See Laing v. Federal Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). However, Plaintiff's allegation that male managers were not treated the same as Plaintiff appears to be based upon her own recollection in her position with HR, rather than any additional evidence, that no other females were in managerial roles, and no other employees were "demoted" during this time. She does not provide any evidence to suggest that had there been any males in Mr. Helder's department, he would have

---

[11] Within her objections, Plaintiff states her own opinion that she was effective in her employment despite "a lack of technical knowledge."

treated them more favorably than women. Even if this Court were to accept this allegation as true, this evidence does not establish that Defendant's reasons for changing Plaintiff's employment were pretext. Plaintiff has not provided evidence to suggest that, even were this Court to assume Mr. Helder held some discriminatory animus, that this intent should be imputed to the decision makers within the company who ultimately made the decision to change Plaintiff to a part-time employee. Nor does Plaintiff provide sufficient evidence to rebut the fact that Defendant hired someone to fulfill her role based on that individual's skills and technical expertise.

Finally, Plaintiff argues that Defendant's proffered reason for changing her full time position to a part time HR manager role based on the reduction in the workforce was pretext because it was not a recent development. However, Mr. Moore did not cite the reduction in his workforce as the *only* reason for this business decision. Further, even if Plaintiff were able to establish that this particular reason is unpersuasive, she still has not provided any evidence to support that the reason was based upon gender discrimination. *See Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004) ("the ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [a plaintiff's] preferred reason . . is correct.")(quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000)). Accordingly, this Court finds that Plaintiff did not rebut Defendant's reasons for replacing her as the manufacturing manager or otherwise show that the proffered reasons given were pretextual. For the reasons provided in the R&R, as well as for the reasons provided for in this Order, this Court grants summary judgment to Defendant with respect to Plaintiff's Title VII gender/sex discrimination

claims.

## II. Retaliation Claims

In the R&R, the Magistrate Judge recommended finding that Plaintiff did not establish a prima facie case of retaliation as to her allegations that she was retaliated against for making verbal complaints about Mr. Helder. However, the Magistrate Judge did recommend finding that Plaintiff established a prima facie case of retaliation as to her termination. Defendant objected to this recommendation, and also argued that Plaintiff has failed to show that Defendant's reason for eliminating Plaintiff's position was pretext. Plaintiff also raises an objection to this recommendation, and argues that the Magistrate Judge erred in finding that no causal connection exists between complaints and her adverse demotion. Because this Court is granting summary judgment in favor of Defendants as to Plaintiff's retaliation claims, this Court will address each claim in turn.

In order to establish a prima facie retaliation claim, an employee must show the following: (1) she was engaged in protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). The question thus becomes whether Plaintiff identifies an adverse employment action; and if so, how closely connected it is to her protected activity. Plaintiff argues she engaged in protected activity when making her verbal complaints about Mr. Helder and when filing the EEOC charge in this case. The Magistrate Judge recommends granting summary judgment as to Plaintiff's claim that having her workload reduced to a part time position was retaliation for her verbal complaints

15

about Mr. Helder because she was not engaging in protected activity, and therefore she did not establish a prima facie case of retaliation. Specifically, the Magistrate Judge considered the facts presented by Plaintiff. These facts establish that Plaintiff complained to Mr. Moore that other employees told her Mr. Helder was questioning her qualifications and skill set to remain in her then-current position. She also complained that Mr. Helder had issues with women. However, Plaintiff did not establish that she informed Mr. Moore that Mr. Helder sought to remove her based on either her age or her sex. Plaintiff objects to this recommendation because she argues that under the "cat's paw" theory of liability, Mr. Helder's alleged discriminatory views could be imputed to Mr. Moore, the decisionmaker. The cat's paw theory allows for an employer to be held liable for discriminatory employment actions taken by a supervisor, even when the supervisor did not formally take the adverse employment action in question. *Hill v. Lockheed Martin Logistics Mgmt*, Inc. 354 F.3d 277, 290-91 (4th Cir. 2004) (en banc) (citing *Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990)).[12] However, the cat's paw theory of liability is inapplicable under these set of facts. Mr. Helder did not supervise Plaintiff, nor is there any evidence beyond Plaintiff's own subjective belief that Mr. Helder's alleged discriminatory animus toward women had anything to do with the employment action in question.

Moreover, Plaintiff does not provide any support for her allegation that Defendant did in fact "admittedly rely" upon an opinion held by Mr. Helder that had anything to do with her age or sex, rather than his opinion that she was not a good fit. For this same reason, Plaintiff does not establish that she was engaging in protected activity when she spoke with Mr. Moore prior

---

[12] This case was abrogated on other grounds by *Univ. of Tex. Sw. Med. Ct. v. Nassar*, 570 U.S. 338 (2013).

to the decision to reduce her workload to a part-time position. The only testimony in the record establishes that she informed Mr. Moore that Mr. Helder was telling other people that Plaintiff "was no longer going to be at the company working" and that she was "no longer going to be the manufacturing manager." [ECF #26-7; Herring Dep. 166:14-22]. In her position statement to the EEOC, she did not allege that she told Mr. Moore that Mr. Helder was discriminatory toward women. In fact, in Plaintiff's notes, she does not indicate that when she went to speak to Mr. Moore in January of 2016, she made an allegation regarding comments made by Mr. Helder about women. [ECF #30-7, Ex. G]. Accordingly, not only does Plaintiff not provide sufficient evidence beyond her own belief that Mr. Helder was discriminatory toward women, Plaintiff did not establish that she was engaging in protected opposition activity that resulted in an adverse employment action when she complained about Mr. Helder. Even if she did, she has not presented any evidence of a causal link between her alleged complaints about Mr. Helder to Mr. Moore and Defendant's decision to reduce her workload to part-time and hire another individual for the manufacturing manager position. Accordingly, this Court agrees with the Magistrate Judge that summary judgment be granted in favor of Defendants with respect to Plaintiff's retaliation claim based upon her complaints regarding Mr. Helder.

The Magistrate Judge also recommends denying summary judgment as to Plaintiff's retaliatory termination claim and allowing that claim to move forward. Defendant filed objections to the R&R as to whether Plaintiff presented an issue of fact as to timing of when EHRG began providing services to Defendant, thereby establishing a prima facie case of retaliation. Defendant asserts this was as a result of poor sentence construction, in that while Plaintiff's position was

eliminated and the determination was made to use EHRG on November 28, 2016, EHRG did not begin providing services until January 1, 2017, after the holiday season. Moreover, Defendant argues that Plaintiff has not established that the reason for eliminating her position was pretextual.

This Court has considered the allegation that Defendant terminated her position in retaliation for filing an EEOC charge. The Magistrate Judge determined that although the seven month gap between the filing of Plaintiff's EEOC charge and her termination does not by itself establish a causal connection, that in the nine month gap (between her "demotion" and her termination), she was reduced to part-time work, she filed her charge of discrimination and received a right to sue letter, and that fact that EHRG's HR services did not begin until approximately a month after Plaintiff was terminated together was sufficient to establish a prima facie case of discrimination.[13] Defendant objects to the finding that Plaintiff established a prima facie case of retaliatory discharge because, among other facts, Defendant asserts that it is undisputed that the search for an alternative HR company began in the fall of 2016, and the reason for the one month delay in EHRG commencing services was essentially due to the holiday season. [ECF #40-1, p. 4-5]. Defendant further argues that the right to sue letter cannot be used as support for a causal connection because it is "part and parcel" of the original charge. [ECF #40-1, p. 5]. In other words, Defendant argues there is no causal connection between her termination and the filing of the EEOC charge.

After considering the arguments made to the R&R, this Court finds that Plaintiff has failed to establish a prima facie case of retaliatory discharge under these set of facts. Where as here,

---

[13]Defendant does not dispute that the filing of an EEOC charge is protected activity.

temporal proximity is missing between the protected activity and an adverse employment action, courts may look to the "intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Here, Plaintiff was "demoted" two months *prior* to the filing of her EEOC charge. As explained by Defendant, the timing of the right to sue letter does not add support for a causal connection because the letter is part and parcel of filing a charge with the EEOC. While the Magistrate Judge is correct that there may have been a one month time period between the start of EHRG's services and Plaintiff's termination, Plaintiff does not dispute Mr. Steinback's contention that the search for a company to handle payroll began in the fall of 2016, and that Plaintiff found this company, which also happened to do HR, prior to her termination. [ECF #30-4, Moore Dep. 80: 1-25]. Plaintiff does not otherwise argue that she was subjected to retaliatory animus between the filing of the EEOC charge and her termination. Thus, Plaintiff has failed to establish a causal connection between the filing of the charge and her termination.

Nonetheless, even assuming Plaintiff established a prima facie case as to this claim, this Court finds that Plaintiff has not provided sufficient evidence to rebut Defendant's reasons for eliminating her position or show that the reason was pretext for retaliatory termination. The Magistrate Judge cited the following evidence provided by Plaintiff to establish pretext, including the fact that the payroll needs had always been outsourced, EHRG was not providing any additional services besides payroll, and EHRG's services did not begin until a month after Plaintiff's position was eliminated. Further, the Magistrate Judge acknowledged that this foundation, though weak, was sufficient to establish pretext. In order to establish pretext, Plaintiff

19

must present evidence that (1) the reason for terminating her was false; and (2) retaliation was the real reason for termination. *See Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 252 (4th Cir. 2015). At the pretext stage, a plaintiff must prove that retaliation was a but-for cause of the challenged adverse employment action, here the elimination of Plaintiff's position. *Id.* In replying to Defendant's objections, Plaintiff again argues that the seven months of elapsed time from when she filed her EEOC charge to when her position was eliminated, along with her complaints about Mr. Helder's alleged treatment of Plaintiff, establish pretext. However, while this "evidence" may help support establish a prima facie case of retaliation, it does not rebut or support a finding Defendant's reasons for making the business decision to eliminate her position as pretext.

Defendant argues that based on the financial savings to the company, it made the decision to terminate Plaintiff's position and outsource its HR needs. Defendant supports this claim by showing that EHRG was not just handing payroll, but it also handled other services, including benefits administration, safety, and legal compliance. Further, Defendant states that the invoices support Defendant's reason for eliminating the position, i.e. that the company would benefit from a financial savings by using EHRG for its HR needs. Finally, Defendant argues that the lone remaining point for finding pretext is that Mr. Steinback's affidavit provides that, "the Company decided to eliminate the part-time HR position and outsource all of the HR functions to EHRG effective November 28, 2016." [ECF #26-5, Steinback Aff., ¶ 13]. Defendant argues that while perhaps this sentence could have been written better, the fact remains that the HR position was eliminated and the decision was made to outsource those functions by EHRG at that time,

regardless of whether EHRG actually began providing services approximately a month later, at the start of the new year. In other words, the only impact of this "evidence" is that the savings began in January 2017 as opposed to December 2016.

This Court agrees with Defendant that the alleged inconsistency between whether Defendant alleged the HR Company was to begin work on November 28, 2016 versus evidence suggesting the company actually started work a month later will not suffice to establish pretext under these set of facts. Other evidence in the record supports Defendant's allegation that the company EHRG was hired based on a perceived significant savings for the company, despite Plaintiff's allegations to the contrary. Defendant produced excerpts from Mr. Moore's deposition who testified that Plaintiff was helping the company search for another payroll company to use, and she found EHRG, who happened to also perform HR functions, as well. [ECF #30-4, Moore Dep. 80: 1-25]. Once Defendant realized the potential for the financial savings, the company decided it no longer needed to employ someone in Plaintiff's position. In other words, Plaintiff found her own replacement. Defendant also submitted the affidavit of Mr. Steinback who averred that the company began its search for a company to outsource its payroll needs in the fall of 2016, which Plaintiff does not appear to dispute. The documents provided by EHRG to Plaintiff, reveal that EHRG offered Defendant a wide array of services, and that they quoted Defendant for "comprehensive HR administration," further supporting Defendant's reasons for eliminating the HR position. [ECF #30-5]. In response, Plaintiff alleges that EHRG was only billing Defendant for payroll services, as opposed to other services, however Plaintiff does not provide evidence to rebut evidence that Defendant was billed for services beyond payroll by EHRG. [ECF #30-5].

Plaintiff also asserts that in her role as HR manager she performed more duties than were "outsourced." While Plaintiff may be correct that throughout the course of her employment she performed additional services, Plaintiff cannot rely upon her own allegations to rebut the actual, legitimate business decision set forth by Defendant, which was that the total cost to hire EHRG to handle HR processes, along with payroll, resulted in a significant savings for the company. Plaintiff has not offered sufficient evidence to rebut that the reason provided by Defendant to hire EHRG is not supported by the record. Plaintiff has also not provided sufficient evidence to show that Defendant eliminated her position in response to her EEOC charge filed months earlier. Accordingly, Plaintiff has not provided sufficient evidence to rebut Defendant's reason for terminating the position. This Court thus finds Defendant is entitled to summary judgment as to all retaliation claims alleged by Plaintiff.

### Conclusion

The Court has thoroughly reviewed the entire record, including all pleadings and exhibits filed in this case. For the reasons stated above, this Court **ADOPTS in part and REJECTS in part** the Magistrate Judge's Report & Recommendation. [ECF #39]. Defendant's motion for summary judgment [ECF #26] is **GRANTED**, and summary judgment is granted to Defendant as to Plaintiff's claims.


**IT IS SO ORDERED.**


Florence, South Carolina                                    s/ R. Bryan Harwell
September 28, 2018                                          R. Bryan Harwell
                                                           United States District Judge